LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (111070)
REED R. KATHREIN (139304)
JEFF D. FRIEDMAN (173886)
SYLVIA WAHBA KELLER (197612)
CONNIE M. CHEUNG (215381)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)
PatC@lerachlaw.com
ReedK@lerachlaw.com
JFriedman@lerachlaw.com
SylviaW@lerachlaw.com
ConnieC@lerachlaw.com
– and –
WILLIAM S. LERACH (68581)
ELIZABETH A. ACEVEDO (227347)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
BillL@lerachlaw.com
EAcevedo@lerachlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re CV THERAPEUTICS, INC. SECURITIES LITIGATION | ) ) ) ) | No. C-03-3709-SI |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | NOTICE OF MOTION AND MOTION TO |
| ALL ACTIONS. | ) ) ) ) | COMPEL PRODUCTION AND FOR AN ORDER TO SHOW CAUSE WHY SANCTIONS FOR DESTRUCTION OF DOCUMENTS SHOULD NOT BE ENTERED; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | | DATE:          March 31, 2006 TIME:          9:00 a.m. COURTROOM:  The Honorable                        Susan Illston |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................1

II. BACKGROUND ................................................................................3

III. PROCEDURAL HISTORY.................................................................4

    A.    Defendants' Production from the Three Selected Back-Up Tapes Reveals Intentional Destruction of E-Mail by Executives from Their E-Mail Boxes and Defendants' Failure to Produce Said E-Mails from Existing Back-Up Tapes ................................................................................8

    B.    Defendants Hid the Existence of Back-up Tapes of Senior Executives ................10

    C.    Defendants Failed to Institute an Actual Document Preservation Program ..........14

    D.    Defendants Refuse to Review and Produce from the H and S Drives, the eRoom and Documentum ........................................................15

    E.    The Court Should Order Defendants to Show Cause Why They Should Not Be Sanctioned ................................................................16

    F.    Defendants Have Waived the Attorney Client Privilege or the Right to Review for Relevance ........................................................21

    G.    Defendants Should Be Compelled To Produce Evidence of Their Search Methodology ................................................................22

IV. CONCLUSION................................................................................23

1

# TABLE OF AUTHORITIES

2

**Page**

3

*Antioch Co. v. Scrapbook Borders, Inc.*,
    210 F.R.D. 645 (D. Minn. 2002)......................................................................17

4

*Barnhill v. United States*,
    11 F.3d 1360 (7th Cir. 1993) ........................................................................17

5

6

*Blanchard v. Edgemark Fin. Corp.*,
    192 F.R.D. 233 (N.D. Ill. 2000)....................................................................22

7

*Brandt v. Vulcan, Inc.*,
    30 F.3d 752 (7th Cir. 1994) ..........................................................................17

8

9

*CIA Petrolera Caribe, Inc. v. ABBA Serv. Center*,
    116 F.R.D. 90 (D.P.R. 1987) ........................................................................21

10

*Carlucci v. Piper Aircraft Corp.*,
    102 F.R.D. 472 (D. Fla. 1984) ...............................................................19, 21

11

12

*Chambers v. NASCO*,
    501 U.S. 32 (1991)........................................................................................17

13

*Chism v. Nat'l Heritage Life Ins. Co.*,
    637 F.2d 1328 (9th Cir. 1981) ......................................................................18

14

15

*Computer Assoc. Int'l, Inc. v. American Fundware, Inc.*,
    133 F.R.D. 166 (D. Colo. 1990) ...................................................................19

16

*Farm Construction Servs., Inc. v. Fudge*,
    831 F.2d 18 (1st Cir. 1987)...........................................................................21

17

18

*Frame v. S-H, Inc.*,
    967 F.2d 194 (5th Cir. 1992) ........................................................................18

19

*In Re Bristol-Myers Squibb Sec. Litig.*,
    205 F.R.D. 437 (D.N.J. 2002).......................................................................17

20

*In re Old Banc One S'holders Secs. Litig.*,
    Master File No. 00 C 2100,
    2005 U.S. Dist. LEXIS 32154
    (N.D. Ill. Dec. 8, 2005) .................................................................................19

21

22

23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    169 F.R.D. 598 (D.N.J. 1997).......................................................................19

24

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) .....................................................................22

25

26

*In re Sealed Case*,
    754 F.2d 395 (D.C. Cir. 1985) .....................................................................22

27

28

1

2                                                                                          **Page**

3   *In re St. Johnsbury Trucking Co.*,
          184 B.R. 446 (Bankr. D. Vt. 1995).........................................................................22
4

5   *In re Telxon Corp. Sec. Litig.*,
          No. 5:98CV2876, 1:01CV1078,
          2004 U.S. Dist. LEXIS 27296
6         (N.D. Ohio July 16, 2004).....................................................................................20

7   *Int'l Tel. & Tel. Corp. v. United Tel. Co.*,
          60 F.R.D. 177 (M.D. Fla. 1973)............................................................................22
8

9   *Judicial Watch, Inc. v. United States DOJ*,
          185 F. Supp. 2d 54 (D.D.C. 2002).........................................................................23

10  *Link v. Wabash R. Co.*,
          370 U.S. 626 (1962).......................................................................................18, 21
11

12  *Marshall v. F.W. Woolworth, Inc.*,
          122 F.R.D. 117 (D.P.R. 1988) ..............................................................................21

13  *Nat'l Ass'n of Radiation Survivors v. Turnage*,
          115 F.R.D. 543 (N. D. Cal. 1987)..........................................................................20
14

15  *Nat'l Hockey League v. Metropolitan Hockey Club*,
          427 U.S. 639 (1976)..............................................................................................18

16  *OpenTV v. Liberate Techs.*,
          219 F.R.D. 474 (N.D. Cal. 2003).....................................................................16, 17
17

18  *Oppenheimer Fund, Inc. v. Sanders*,
          437 U.S. 340 (1978)..............................................................................................16

19  *Parrott v. Wilson*,
          707 F.2d 1262 (11th Cir. 1983) ............................................................................22
20

21  *Playboy Enters. v. Welles*,
          60 F. Supp. 2d 1050 (S.D. Cal. 1999)...................................................................17

22  *Professional Seminar Consultants v. Sino Am. Tech. Exch. Council*,
          727 F.2d 1470 (9th Cir. 1984) ..............................................................................18
23

24  *Rambus, Inc. v. Infineon Techs. AG*,
          222 F.R.D. 280 (E.D. Va. 2004)............................................................................22

25  *Residential Funding Corp. v. DeGeorge Fin. Corp.*,
          306 F.3d 99 (2d Cir. 2002).....................................................................................20
26

27  *Roadway Express, Inc. v. Piper*,
          447 U.S. 752 (1980)..............................................................................................17

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN          - iii -
ORDER TO SHOW CAUSE - C-03-3709-SI

1

2                                                                                          **Page**

3   *Silvestri v. GMC,*
          271 F.3d 583 (4th Cir. 2001) ...........................................................17

4

    *Sound Video Unlimited, Inc. v. Video Shack, Inc.,*
5         661 F. Supp. 1482 (N.D. Ill. 1987) ..................................................22

6   *Telectron, Inc. v. Overhead Door Corp.,*
          116 F.R.D. 107 (S.D. Fla. 1987) ......................................................18

7

8   *Thompson v. United States HUD,*
          219 F.R.D. 93 (D. Md. 2003)...........................................................17

9   *Trigon Ins. Co. v. United States,*
          204 F.R.D. 277 (E.D. Va. 2001) ......................................................17

10

11  *Tulip Comp. Inter., B.V. v. Dell Comp. Corp.,*
          No. 00-981-RRM,
          2002 U.S. Dist. LEXIS 7792
12        (D. Del. Apr. 30, 2002) ...................................................................23

13  *United States v. Andersen,*
          374 F.3d 281 (5th Cir. 2004),
14        *rev'd on other grounds,*
          ___U.S.___, 125 S. Ct. 2129 (2005)................................................21

15

16  *United States v. Kirkland,*
          330 F. Supp. 2d 1151 (D. Or. 2004) ................................................21

17  *United States v. Rasheed,*
          663 F.2d 843 (9th Cir. 1981) ...........................................................21

18

19  *United States v. Ruhbayan,*
          201 F. Supp. 2d 682 (E.D. Va. 2002) ..............................................22

20  *Wm. T. Thompson Co. v. General Nutrition Corp.,*
          593 F. Supp. 1443 (D. Cal. 1984)................................................17, 18

21

22  *Zubulake v. UBS Warburg LLC,*
          217 F.R.D. 309 (S.D.N.Y. 2003) .....................................................17

23  *Zubulake v. UBS Warburg LLC,*
          229 F.R.D. 422 (S.D.N.Y. 2004) .....................................................22

24

                                        **STATUTES**

25
    15 U.S.C.
26        §78u-4(b)(3).......................................................................................4

27  18 U.S.C.
          §1503.............................................................................................21
28        §1512(b).........................................................................................21

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN            - iv -
ORDER TO SHOW CAUSE - C-03-3709-SI

1

2                                                                                     **Page**

3          §1519.................................................................................................................4

4   Fed. R. Civ. P.
          Rule 26(a)...................................................................................... *passim*
5          Rule 26(b)(1).............................................................................................16
          Rule 30(b)(6).............................................................................................12
6          Rule 34.......................................................................................................17
          Rule 37..................................................................................................17, 18
7          Rule 37(b)(2).............................................................................................18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2         PLEASE TAKE NOTICE that on March 31, 2006, at 9:00 a.m., plaintiff will and hereby

3   move this Court for an order compelling production of electronic documents and for an order to

4   show cause why sanctions should not be entered for the destruction and/or spoliation of evidence,

5   and for hiding evidence.  This motion is brought pursuant to Fed. R. Civ. P.  The parties have

6   fulfilled their obligation to meet and confer pursuant to Civil L.R. 37-1(b) and have met numerous

7   times to try to resolve this discovery dispute.  This motion is based upon this Notice of Motion, the

8   Memorandum of Points and Authorities, the Declaration of Reed R. Kathrein ("Kathrein Decl."),

9   filed herewith other documents contained in the underlying record, and upon any other evidence that

10   is submitted before or during the hearing on this matter.

11   **I.    INTRODUCTION**

12         For the second time, defendants have failed to complete production of documents by the time

13   ordered by the Court.  Even more egregious is the mounting evidence that defendants failed to

14   preserve evidence as certified to this court, such as having deleted entire e-mail folders from their

15   mailboxes.  Notwithstanding, defendants refuse to take all necessary steps to produce the deleted

16   documents  from back-up tapes revealed to plaintiff, as well as tapes they hid form plaintiff until

17   recently.

18         Production from back-up tapes is necessary because defendants failed to preserve evidence

19   on their "active servers," by deleting documents and e-mails long after notice of the litigation.  When

20   some of these facts became apparent last year, after the February 4, 2005 document production

21   deadline had passed, defendants agreed to a "process" to recover e-mails from what defendants

22   represented to plaintiff to be the universe of CVT's back-up tapes.  Kathrein Decl., Exhibit 1.

23         Now, with the passing of the second deadline on February 10, 2006, for defendants to

24   complete production, plaintiff has discovered that the "process" for recovering destroyed documents

25   from these tapes is flawed.  For example, the e-mails recovered from the few tapes that defendants

26   agreed to restore reveal that individual defendants purged their e-mails at various unexplained yet

27   convenient intervals.  For example, defendant Spiegelman appears to have purged his e-mail folders

28   between December 8, 2003, when the Food and Drug Administration ("FDA") denied approval of

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                    - 1 -

1  Renexa (the subject this litigation) and December 28, 2003, the date of the back-up tape that plaintiff

2  chose to have restored.  This apparent purge happened just days after Spiegelman had his counsel

3  file a certification with this Court that he understood the consequences of failing to preserve

4  evidence.

5       Even worse, defendants repeatedly represented over the last year that they disclosed all back-

6  up tapes and procedures to plaintiff for purposes of selecting tapes to restore.  Defendants repeatedly

7  denied the existence of a process for backing up the hard drives of CVT's management and the

8  individual defendants.  Only after being confronted by plaintiff with specific information of a "safe

9  of tapes" kept next to the desk of defendants' 30(b)(6) deponent on electronic preservation, do

10  defendants now admit that they are in the possession of hundreds of tapes used to back-up the hard

11  drives of the individual defendants, as well as 12 of the 20 witnesses on whom defendants intend to

12  rely in defense of their case according to their Rule 26(a) disclosures.

13       In addition, plaintiff has recently learned that defendants have not even searched for or

14  produced relevant documents from key locations on their "active servers" which they represented

15  they were searching a year ago before they missed their first production deadline.  They have also

16  not actually performed attorney reviews on relevance as they only look for documents using

17  unidentified key word searches.  While defendants claimed, a couple weeks ago, that a search of

18  these key locations would be unduly burdensome and/or duplicative, they have not provided plaintiff

19  with specific information sufficient to support this claim or explanation of why the search was not

20  conducted over a year ago as represented.  Defendants also have failed to identify the search terms

21  used, and under what circumstances, so plaintiff can evaluate his selection of responsive documents.

22       In the face of these falsehoods, and apparent document destruction, defendants refuse to

23  remedy the situation they created.  Rather, defendants take the position that they are finished with

24  their obligation to produce.  While letters received yesterday somewhat soften this position, their

25  response is inadequate.  The law is clear that defendants should not be rewarded for such conduct, as

26  well as cost and prejudice to plaintiff.

27       Accordingly, plaintiff requests that this Court enter an order directing defendants to show

28  cause why they should not be held in contempt for violating this court's orders and hold a hearing

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                    - 2 -

1  and take testimony if necessary.  Defendants should be ordered to: (1) search, and if necessary,

2  restore each of the previously disclosed tapes and drives sufficient to capture all deleted e-mail and

3  to produce them to plaintiff without review or redaction; (2) provide plaintiff with direct access to

4  the H and S drives as well as the e-Room and Documentum which they failed and refused to search;

5  (3) turn over all the "hidden" or "previously unknown" tapes to plaintiff without review or redaction;

6  (4) identify what was searched, how documents were selected and what search terms were used.

7  Additionally, defendants should be barred from using or commenting on any document found in

8  such tapes or drives, and from introducing any testimony of or examining any witness identified in

9  their Rule 26(a) disclosures whose e-mails or relevant documents are found in such tapes or drives.

10  In addition, this Court should consider awarding plaintiff counsel their fees and expenses for time

11  wasted in discovery over this past year; time which was extended solely for defendants to try to

12  remedy their failure to produce last year.  Alternatively, plaintiff seeks expedited discovery and the

13  right to inspect the unaltered back-up tape contents to determine, more concretely, whether and to

14  what extent, defendants destroyed documents.

15  **II.      BACKGROUND**

16         Plaintiff filed this securities class action on August 8, 2003, against defendants CVT, Louis

17  G. Lange ("Lange"), and Daniel K. Spiegelman ("Spiegelman") (collectively, "defendants").  Luiz

18  Belardinelli ("Belardinelli"), and Brent Blackburn ("Blackburn") were also named as defendants, but

19  were dismissed from the case on August 5, 2004.  The complaint alleges defendants defrauded

20  investors by making misleading statements relating to the drug approval process and prospects for

21  the drug Ranexa.

22         Stated simply, CVT misled investors to believe the FDA had not presented the company with

23  numerous identified problems that reduced the chances of approval.  Instead, the company painted a

24  false picture that there were clear skies ahead.  In truth, behind the scenes storm clouds had been

25  gathering for years.  The FDA repeatedly admonished CVT that CVT was not satisfactorily

26  addressing the FDA's ongoing concerns regarding Ranexa's safety and efficacy.  For example, the

27  FDA repeatedly requested that CVT conduct an additional critical trial ("Refractory Study") making

28  Ranexa's near-term approval unlikely.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                                    - 3 -

1    Central to proving this case, then, is the exchange of information between and amongst the

2    defendants, senior CVT employees, the FDA, and CVT's advisors and analysts.  Documents and e-

3    mails of this nature are ***critical*** evidence for the finder of fact.

4    **III.    PROCEDURAL HISTORY**

5    The first complaint in this action was filed on August 8, 2003.  On August 27, 2003, Latham

6    and Watkins accepted service on behalf of defendants.  On October 7, 2003, plaintiff filed and

7    served defendants with a motion for the preservation of documents requesting the Court order the

8    preservation of documents relating to this litigation in accordance with 15 U.S.C. §78u-4(b)(3)(C)(i),

9    and seeking a certification that documents or other information have not been knowingly destroyed,

10   altered, or concealed akin to the provision in §802 of the Sarbanes-Oxley Act which provides:

11     Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies,
  or makes a false entry in any record, document, or tangible object with the intent to

12     impede, obstruct, or influence the investigation or proper administration of any
  matter within the jurisdiction of any department or agency of the United States . . .

13     shall be fined under this title, imprisoned not more than 20 years, or both.

14   18 U.S.C. §1519.  Senator Patrick Leahy commented that this provision was meant to ensure that

15   "federal law enforcement officials and regulators and victims can conduct more effective inquiries

16   . . . ."  Legislative History of Title VIII of HR 2673; The Sarbanes-Oxley Act of 2002, 148 Cong.

17   Rec. S.7418.

18   On October 31, 2003, defendants filed an objection stating that "PSLRA (and the Federal

19   Rules of Civil Procedure) already require the preservation of relevant evidence, and Plaintiff have no

20   facts whatsoever suggesting Defendants have not complied with the law."  Kathrein Decl., Ex. 2 at 1.

21   In addition, defendants filed a declaration stating, that defendants were well aware of their

22   obligations to preserve under the Private Securities Litigation Reform Act ("PSLRA"), the Federal

23   Rules of Civil Procedure and under the District's model consolidation order, and that they "have

24   taken appropriate steps to ensure that their clients were fully aware" of these obligations."  Kathrein

25   Decl., Ex. 3 at 1.

26   Pursuant to Court order entered on November 21, 2003, defendants filed a certification on

27   December 10, 2003 that defendants were informed of their preservation obligations and the possible

28   legal consequences of their failure to comply.  Kathrein Decl., Exs. 4 & 5.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI          - 4 -

1    On September 20, 2004, plaintiff propounded requests for production of documents on CVT.

2  Kathrein Decl., Ex. 6.  By agreement between the parties, plaintiff's document requests cover the

3  period from June 24, 2002 to June 5, 2004.  Plaintiff's document request defined documents to

4  include "e-mail, and all other data compilations from which information can be obtained (by

5  translation, if necessary, by you through detection devices into usable form), including, but not

6  limited to, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic

7  tapes." *Id*. at 3.

8    On February 9, 2005, the Court granted defendants' motion to compel Dr. Atul Laddu

9  ("Laddu") for deposition.  Kathrein Decl., Ex. 7.  In its order, the Court cited to defendants'

10  representation that they had produced Laddu's documents and found no reason to delay CW1's

11  deposition.  Defendants represented to plaintiff and the Court that they were "not aware of any other

12  documents related to [CW1] in Defendants' possession, custody or control."  Kathrein Decl., Ex. 8 at

13  2.

14    In fact, only at Laddu's deposition on February 14, 2005, did plaintiff learn defendants never

15  produced Laddu's documents and e-mails contained on CVT's back-up tapes.  Defendants attempted

16  to justify their conduct by asserting there was no agreement to produce documents from back-up

17  tapes.

18    After several attempts to address the issue of back-up tapes, plaintiff requested a meet-and-

19  confer to get CVT to stop its stalling tactics and commit to a position.  On March 2, 2005, plaintiff

20  met and conferred with counsel for CVT.  Kathrein Decl., Ex. 9 at ¶4. During this meet-and-confer,

21  plaintiff repeated its previous requests for information stored on back-up tapes, including e-mails for

22  the relevant time period.  Plaintiff also suggested a procedure to try and limit the burden and costs

23  associated therewith.

24    To underscore the need for this information, plaintiff told CVT that, based on a review of e-

25  mails produced by CVT concerning key personnel, there was an alarming absence of e-mails

26  covering the class period – both in hard and soft copy form.  Kathrein Decl., Ex. 9.

27    In response, CVT ***admitted*** that it produced few e-mails.  Kathrein Decl., Ex. 10.  Counsel

28  for CVT claimed that this should not be a surprise, because measures to retain documents were

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                            - 5 -

1   implemented only after this lawsuit was filed on August 8, 2003. *Id.* at 1 (stating that "[i]t stands to

2   reason that there are fewer documents pre-dating this action on CVT's computer network" than

3   documents created after the filing of the complaint in this action). The obvious inference is that

4   CVT's document "retention" policy did not stop defendants or their employees from erasing a

5   substantial amount of relevant, electronic information stored on CVT's computer network.

6   Contrary to counsel's characterization of the benign significance of CVT's pre-suit document

7   cleansing, CVT produced a glaringly *de minimus* number of e-mails in the class period (December

8   30, 2002 through December 5, 2003) for critical personnel engaged in the drug approval process for

9   Ranexa. For example, defendants produced no e-mails whatsoever covering the class period for

10  Belardinelli, who was the Vice President of Drug Research and Pharmacologic Sciences for CVT.

11  Ex-defendant Blackburn, Senior Vice President of Drug Discovery and Pre-Clinical Development,

12  had only 25 e-mails out of 182 produced for the period existing before plaintiff filed suit. Defendant

13  Spiegelman, Chief Financial Officer, produced only 23 e-mails for the period prior to the filing of

14  the suit and ***none for March, June, August, September, and November***. In addition, Dr. Andy

15  Wolff, Senior Vice President Clinical Research and Development, the person communicating most

16  with the FDA on Ranexa, produced only two pre-suit e-mails. Ms. Carol Karp, Vice President of

17  Regulatory Affairs, produced only 20 pre-suit e-mails. But for the period after the class period, she

18  produced over 400 e-mails.

19  The following chart demonstrates examples of the lack of e-mails produced by CVT for

20  senior executives covering the critical time periods prior to the filing of this action.

21
| Employee | Position | Pre-Suit E-mails Produced by CVT to Plaintiff |
|---|---|---|
| Louis Lange [Defendant] | Chief Executive Officer | 128 |
| Dan Spiegelman [Defendant] | Chief Financial Officer | 23 |
| Luiz Belardinelli [Dismissed Defendant] | Vice President of Drug Research and Pharmacologic Sciences | 0 |
| Brent Blackburn [Dismissed Defendant] | Senior Vice President of Drug Discovery and Pre-Clinical Development | 25 |
| Dr. Andy Wolff | Senior Vice President of Clinical Research and Development | 2 |

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                          - 6 -

| Carol Karp | Vice President of Regulatory Affairs | 20 |

Even in the complete vacuum of information caused by CVT's dilatory conduct, plaintiff's counsel offered a staged approach to retrieve archived data, in an attempt to target information plaintiff seeks. Kathrein Decl., Ex. 9. CVT rejected plaintiff's proposal and instead seemed intent on further delay by repeating CVT's insistence on plaintiff blindly agreeing to cost-sharing. Kathrein Decl., Ex. 10.

After many meet and confer sessions, on March 24, 2005, plaintiff filed a letter brief with this court seeking to compel defendants to produce e-mails from defendants' back-up tapes, as it appeared that defendants failed to preserve and produce the e-mails of its employees that were relevant to this litigation. On March 31, 2005 defendants responded, stating that in order to respond to plaintiff's request to produce e-mails during the agreed upon discovery period, other than those form their active servers, defendants would have to review 1,600 back-up tapes. Because defendants failed to catalog the tapes or preserve the e-mails on the active servers, defendants estimated that just to catalogue and restore 10 tapes would cost defendants $1.6 million!

After further meet and confers, the parties agreed to a procedure whereby defendants would make available to plaintiff the catalogs of tapes created in four time periods that plaintiff hoped would capture most, if not all, of the e-mails at a substantially lower cost to defendants. On May 18, 2005, a stipulation and proposed order on discovery from these tapes was entered and filed by the court. Kathrein Decl., Ex. 11. In essence, plaintiff was to choose three tapes from these catalogs for defendants to restore, and defendants were to produce the e-mails and restored .pst mailboxes of 20 individuals.

Over the next few months, defendants attempted to identify tapes from the relevant time periods selected by plaintiff and provided detailed catalogs of the tapes' contents. The parties went though much back and forth trying to understand the catalogs. For example plaintiff sought to understep why some tapes (brick level tapes) showed the mailbox file structures and the subject line of e-mails in the mailbox folders, and others, did not (Ex. Pete Snow Letter of 8/19, 2005). Finally, plaintiff reluctantly designated seven dumpsters (Kathrein Decl., Ex. 12) and on October 26, 2005,

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN ORDER TO SHOW CAUSE - C-03-3709-SI                                          - 7 -

plaintiff designated one tape (Kathrein Decl., Ex. 13). Defendants began producing e-mails from the tapes in a rolling production from late October in 2005 until in February 13, 2006.

### A.    Defendants' Production from the Three Selected Back-Up Tapes Reveals Intentional Destruction of E-Mail by Executives from Their E-Mail Boxes and Defendants' Failure to Produce Said E-Mails from Existing Back-Up Tapes

In letters dated January 26, 2006 and February 10, 2006 (Kathrein Decl., Exs. 14 & 15), plaintiff raised with defendants that e-mail known to exist in the catalog of some of the back-up tapes was missing from the production of restored .pst mailboxes of CVT senior executives. A comparison of the back-up tape catalogs, defendants' production from the restored tapes, and defendants' document production from CVT's active e-mail server reveals destroyed e-mails and subfolders.

For example, the December 8, 2003 catalog of CVT's brick level back-up of Colin Hislop's e-mail box shows that he had 47 e-mails in the "Ranexa Core Team" subfolder of his "inbox." Curiously, however, defendants' production from the restoration of the December 28, 2003 back-up tapes includes only one e-mail in the same folder of Colin Hislop's e-mail box. That sole e-mail dates back to May 28, 2003.

A similar discrepancy is evident in defendants' production of David McCaleb's e-mail from the back-up tapes. The catalog of the December 3, 2003 brick level e-mail back-up shows that McCaleb maintained a large "deleted items" folder with several hundred, if not several thousand, e-mails. Moreover, McCaleb maintained a "Ran Teams~Comm" subfolder housing what appear to be solely Ranexa-related communications. At least 27 e-mails in this subfolder were entitled "Ranexa TM Core Team Minutes," clearly relevant to this litigation. However, the documents from McCaleb's e-mail file which defendants produced from the December 28, 2003 back-up tapes only includes *one* e-mail entitled "Ranexa TM Core Team Minutes," dated October 13, 2003 – this out of *all* of McCaleb's folders combined.

A review of e-mail produced from the back-up tapes for other users is similarly troubling. For example, there were *no* e-mails produced in Spiegelman's "inbox" or "outbox" from the

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN ORDER TO SHOW CAUSE - C-03-3709-SI                                                        - 8 -

1   December 28, 2003 back-up tapes.  And there were only ten e-mails produced in Spiegelman's "sent

2   items," all but three of which were dated months earlier.

3        Lange's e-mail produced from the August 3, 2003 back-up tapes raises the same questions –

4   there were **no** e-mails produced in his "inbox," "outbox" or "sent items."

5        Defendants, during a meet and confer of January 19, 2006 attempted to the discrepancies

6   explain.  Defendants' explanation for this discrepancy fails.

7        Specifically, defendants argued that the "de-dupe" process would have eliminated e-mails

8   that were in Hislop's "Ranexa Core Team" subfolder, but were produced in either the restoration of

9   **earlier** back-up tapes that plaintiff selected pursuant to the May 11, 2005 stipulation and order, or in

10  the production of e-mails from CVT's active server.  However, the back-up tape production closest

11  in time to the December 28, 2003 tapes was August 3, 2003.  Nevertheless, 21 of the 47 e-mails in

12  Hislop's "Ranexa Core Team" subfolder in the December 8, 2003 catalogue were dated **after August**

13  **3, 2003**.  The "de-dupe" process, therefore, could not have eliminated these e-mails based on the

14  restored back up tapes of August 3, 2003.

15       Nor were these e-mails provided in defendants' active server production.  Hislop's "Ranexa

16  Core Team" subfolder from the active server contained only six e-mails.  All but one of those e-

17  mails is dated **outside** of the period between August 3, 2003 and December 6, 2003.

18       In addition, a comparison of custodians' e-mail boxes reveals that the file structure has been

19  altered.  For example, the December 8, 2003 catalog of Hislop's "inbox," "Ranolozine" subfolder,

20  contains 24 sub-subfolders.  Defendants' production of Hislop's .pst file from the December 28,

21  2003 back-up tapes, however, contains only eight sub-subfolders in the Ranolazine subfolder.

22       A review of Spiegelman's folder structure uncovers the same discrepancy.  The December 8,

23  2003 catalog contains a number of e-mail folders under Spiegelman's "subject area saved e-mails"

24  which are missing from the December 28, 2003 production of his .pst file.  The missing subfolders

25  include relevant titles, such as "Ran Trash" and "class action."  Although defendants assert that any

26  de-dupe process would have eliminated duplicative **e-mails**, the folder structure of the individuals'

27  .pst files should have remained intact.  Attached to Sylvia Keller's February 10, 2006 letter to Jay

28  Pomerantz are screen shots to illustrate all of the points raised above Kathrein Decl., Ex. 15.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                          - 9 -

1    Recently defendants have again claimed that these discrepancies somehow related to the

2    undefined "de-duplication preformed by our vendor."  Kathrein Decl., Ex. 16.  But this process,

3    apparently, impermissibly alters the mailboxes so that they do not contain all relevant e-mails,

4    destroys the file structure, and are thus rendered useless.  Not only is this contrary to the agreement

5    that defendants would produce the mailboxes, in their native format, but plaintiff's review of all the

6    e-mails produced by defendants does not confirm that the missing e-mails were produced.  Even

7    worse, as plaintiff digs deeper, it appears that Spiegelman habitually deleted e-mails.  While the hard

8    copy production of documents from Chris Chai shows receipt of an e-mail received from

9    Spiegelman on November 24, 2003, no such e-mail was produced from Spiegelman's mailbox.

10    Attached to the e-mail is a highly critical document apparently prepared by Spiegelman, the

11    electronic version of which defendants also inexplicably did not produce.  The only conclusion can

12    be that Spiegelman deleted it from his sent folder ***and*** his trash folder.  Kathrein Decl., Ex. 17.

13    Absent an assertion that these documents have been withheld on valid legal grounds (which

14    would not explain the missing subfolders from the restored mailboxes), this Court must presume that

15    the e-mails and their folders were improperly destroyed.

16    Because of missing critical documents and the dearth of relevant e-mails, defendants

17    admitted to plaintiff's on January 19, 2006 that rather than having an attorney actually review

18    documents likely to contain relevant information, they use a variety of search terms to pull

19    documents.  Plaintiff believes that this is completely inappropriate and likely to miss substantial

20    portions of relevant documents.  Nevertheless, in order to fully evaluate this process defendants

21    agreed that they would produce the search terms utilized in isolating responsive documents.

22    Defendants, however, never provided these search terms, and now want to have them designated

23    "Highly Confidential" before they produce.

### B.    Defendants Hid the Existence of Back-up Tapes of Senior Executives

25    Defendants' Rule 26(a) disclosures identify only 20 witnesses who "are likely to have

26    discoverable information that defendants may use to support their defenses in the action."  These

27    individuals include: Belardinelli, Senior Vice President (dismissed defendant); Blackburn, Senior

28    Vice President (dismissed defendant); Christopher Chai, Treasure & Executive Director, Investor

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                                      - 10 -

1   Relation; Michael Crager, Biostatistics; Margaret Dillon, Senior Director, Regulatory Affairs;

2   Marcus Jerling, M.D. Ph.D., Consultant; Carol Karp, Vice President Regulatory Affairs; Louis

3   Lange, Chairman and Chief Executive Officer; David McCaleb, Senior Vice President, Sales and

4   Marketing; Daniel Spiegelman, Senior Vice President and Chief Financial Officer (defendant);

5   Whedy Wang, Senior Director Biometrics; and Andrew Wolff, M.D. , Consultant.  Kathrein Decl.,

6   Ex. 18.

7          Each member of CVT's senior management was also listed in plaintiff's Rule 26(a)

8   disclosures, served on defendants on October 15, 2004, as persons whom plaintiff believed likely to

9   have discoverable information related to the subject matter of the complaint.  *Id*.

10         Plaintiff repeatedly requested all electronic documents, including e-mails, back-up tapes and

11  hard drives containing any data, sent or received by these individuals relating to Renexa.  For

12  example, Document Request No. 8, served on defendants on September 20, 2004, asks for all

13  "computer files, back-up tapes and hard drives of the Individual Defendants . . . concerning Renexa

14  . . . ."  Requests No. 19 and No. 26 ask for "all documents relating to the marketability of Renexa"

15  and those "relating to any meeting between defendants and the FDA" concerning Renexa."  Kathrein

16  Decl., Ex. 19 at 9.  The word "documents" is defined to include e-mail and electronic data no matter

17  how it is stored.  *Id*. at 2.  And while defendants objected to Request No. 8 as burdensome and

18  duplicative, they agreed to produce pursuant to Request No. 19 and Request No. 27, as well as many

19  others, and committed to meeting with plaintiff to dismiss what they would produce as a

20  "document."  Kathrein Decl., Ex. 20 at 3.  Thus, over the next few months, defendants and plaintiff

21  negotiated over what electronic documents would be produced and how.  On December 8, 2004,

22  defendants filed a letter brief with the court seeking a protective order to produce electronic

23  documents in a non-native format.  Kathrein Decl., Ex. 21.  On December 21, 2004, after meeting

24  with defendants, plaintiff notified the Court that defendants agreed that they "would produce

25  responsive e-mails in their native format, including, where it exists, PST or mailbox files."  Kathrein

26  Decl., Ex. 22.

27

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                              - 11 -

1     On January 12, 2005, defendants agreed to expedite production of the e-mails of the

2 following ten CVT employees to assist in the upcoming mediation: Belardinelli, Blackburn, Chai,

3 Crager, Dillon, Karp, Lange, Spiegelman, Wang, and Wolff.  Kathrein Decl., Ex. 23.

4     Plaintiff repeatedly asked and was told by CVT that the sole medium for backing up

5 electronic data and e-mail at CVT during the class period was the systemwide network back-up.

6 Defendant's confirmed that this was the sole medium.  In fact, two separate deponents testified under

7 oath on behalf of CVT pursuant to Fed. R. Civ. P. 30(b)(6) that there were no known back-ups of

8 individuals' hard drives or computers.

9     On January 19, 2005, plaintiff took his first 30(b)(6) deposition on the location of electronic

10 data and back-ups at CVT. Defendants produced Douglas T. Sheehy, CVT's senior corporate

11 counsel, to testify on behalf of CVT.  Amongst other things, the deposition notice obligated

12 defendants to produce a person who would have knowledge of the "identity of the operating systems

13 and back-up systems."  Kathrein Decl., Ex. 24.  During that deposition, counsel asked defendants

14 what files and computers defendants backed-up, how often, the systems used, and where the tapes

15 were stored.

16     As for the personal computers used by CVT's senior management - laptops, desktops, and

17 personal C drives on those computers – Mr. Sheehy's testimony was vague and evasive.  He

18 testified, "I don't know if we do back it up", that "we don't make a policy of backing it up" and that

19 while between 2002 and the present while "in some instances" individuals desktops were backed up,

20 "there were no specific circumstances, to my understanding or to my knowledge."  Kathrein Decl.,

21 Ex. 25 at 32-36.

22     As for the servers, with the shared hard drives, Mr. Sheehy explained that there was a daily

23 back-up process using Veritas software, that the tapes were maintained on site for a few days and

24 then shipped offsite to Datasafe.  *Id*. at 51-55.  Mr. Sheehy identified Mr. Floyd Haas as the source

25 of some of his information.  *Id*. at 91-92.

26     Subsequently, in February 2005, just days after the February 4, 2005 deadline for defendants

27 to produce all documents, plaintiff discovered that defendants had produced only the e-mails found

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                                          - 12 -

1   on CVT's active servers, which in material instances, had been purged or contained mostly pre-2004

2   e-mails.

3          While letter briefs were submitted to the Court to compel production of e-mails from the

4   back-up tapes identified by Mr. Sheehy, defendants agreed to produce Floyd Haas for a continuation

5   of the 30(b)(6) deposition, because Sheehy, "neither knew whether CVT maintains any indices of the

6   contents of back-up tapes nor whether CVT backed-up individual hard drives on the filing of this

7   action." Kathrein Decl., Exs. 26 & 27.  On March 31, 2005, Mr. Floyd Haas testified on behalf of

8   CVT that the backing up of employees hard drives was only "theoretical" and that the manner of

9   doing so was copying it to a "floppy, CD [or] network drives."  Kathrein Decl., Ex. 28.

10         Defendants then led plaintiff through many weeks of extensive negotiations and ultimately

11  entered into a stipulation regarding the production of e-mails from back-up tapes from CVT's

12  network servers.  Each of the CVT employees, listed above, was also on the list of 20 individuals for

13  whom plaintiff requested recovery of deleted e-mails Kathrein Decl., Ex. 29.  Plaintiff even agreed

14  to a cost-sharing arrangement based on certain considerations, including the understanding that back-

15  ups from CVT's network servers were the only method for plaintiff to receive additional e-mails due

16  to the paucity of e-mails produced by CVT covering the class period.  At no time did defendants

17  inform plaintiff that there was an additional back-up system that may in fact have been less

18  expensive, more comprehensive, and quicker to restore and produce.

19         Notwithstanding defendants' denial of knowledge of anything other than the "theoretical"

20  ability to back-up individuals' computers, defendants now admit the existence and use of an

21  additional back-up system.  On February 1, 2006, plaintiff confronted defendants with information,

22  that back-up tapes of the computers of each of the top management individuals listed above,

23  including the present and former individual defendants, were being kept in a safe next to Floyd

24  Haas' desk.  While defendants initially denied knowledge, they have now confirmed that hundreds

25  of back-up tapes, previously undisclosed, exist.  As revealed in Mr. Pomerantz's letter dated

26  February 17, 2006, defendants admit to having previously undisclosed back-ups of CVT's e-mail

27  and databases during August and September 2002, and back-ups of CVT employees hard drives

28  going back as far 1995 and as late as September 2003.  Six sets of these back-ups appear to have

1  been created during the relevant discovery period and include the hard drives of each of CVT

2  employees set forth above. Kathrein Decl., Ex. 30. The tapes include tapes of each of the CVT

3  current or former employees listed on defendants' Rule 26(a) disclosures and from whom plaintiff

4  sought e-mail. The tapes also include back-ups of servers previously undisclosed.

5      Defendants' explanation for their failure to reveal these tapes strains credibility. They were

6  next to their 30(b)(6) deponent's desk. They contained back-ups that surely the individual

7  defendants and senior executives knew about as it would have required access to their computers and

8  laptops.

9      The impact is serious. Plaintiff spent over a year negotiating with defendants and paying to

10  restore and recover e-mails when these tapes may have been the least costly, most complete, and

11  most efficient method. The deadline for defendants to complete discovery had already been

12  extended a year so defendant's could rectify their failure to preserve documents.

13  **C.    Defendants Failed to Institute an Actual Document Preservation**
        **Program**

14

15      While defendants certified to this court that they had informed themselves of their duty to

16  preserve documents relevant to the litigation and issued express instructions on preservation on

17  August 8, 2003, the above facts show that defendant Spiegelman destroyed the bulk of his e-mail

18  between December 8, 2003 and December 28, 2003. This, just days after he and the other

19  defendants filed their December 3, 2003 certification. Kathrein Decl., Ex. 31.

20      Similarly, the above facts show, that while six sets of back-ups of the defendants' hard drives

21  and network drives were made during the relevant time period, including one set made in September,

22  2003, (Kathrein Decl., Ex. 30), these tapes inexplicably disappeared until plaintiff told defendants

23  that they could be found in a safe next to the desk of Floyd Haas. Notably, Floyd Haas is the second

24  30(b)(6) deponent on document preservation who was tendered after CVT's senior corporate

25  counsel, could not adequately answer questions.

26      In fact, both Mr. Sheehy and Mr. Haas, who were tendered to testify on "all steps taken by

27  defendants to preserve" and the "identity of all offline media with data, e-mail or documents

28  preserved for or relating to this lawsuit" (Kathrein Decl., Ex. 24) were unable to point to any policy

1   to preserve evidence after August 8, 2003.  Mr. Haas stated in no uncertain terms that "I don't

2   believe there is one."  Kathrein Decl., Ex. 28 at 82-87.

3        Incredibly, Mr. Sheehy testified, in January 2005, just as CVT was finishing its document

4   production, that CVT did not have a policy on saving e-mails.  Kathrein Decl., Ex. 25 at 59-60.

5   Similarly, on March 31, 2005, as plaintiff and defendants were briefing to this court whether to

6   compel defendants to restore the back-up tapes, Floyd Haas testified that he was unaware of any

7   instructions, sent after August 2003, that directed employees "not to delete their e-mails" (Kathrein

8   Decl., Ex. 28 at 84)  Haas testified that employees were free to delete their e-mail: "It's e-mail; they

9   can do whatever they want."  *Id*. at 87.

10       The impact of this failure, as seen above, has been huge.  The Court's schedule has been

11  delayed, and plaintiff has wasted enormous resources trying to recover the destroyed documents.

12  Even today, as seen above, those efforts have been found wasting.

13  **D.    Defendants Refuse to Review and Produce from the H and S Drives,**
    **the eRoom and Documentum**

14

15       On October 10, 2005, plaintiff requested that defendants meet and confer on the production

16  of other documents, other than e-mail and their attachments, from the back-up tapes.  Kathrein Decl.,

17  Ex. 32.  Defendants responded, stating that such a meeting was premature, and violated the Court's

18  May 18, 2005 order which required plaintiff to review the e-mails produced from the restored tapes

19  before requesting additional discovery from the back-up tapes.  Kathrein Decl., Ex. 33.

20       On January 19, 2006, defendants contacted plaintiff to discuss finalization of their production

21  of documents for the February deadline.  Plaintiff had demanded assurance that all media sources

22  had been searched.  With no reason given, other than they thought the searches would be unduly

23  burdensome and perhaps duplicative, defendants stated the they had not searched and would not

24  search the H and S drives, the eRoom and Documentum from the active servers let alone the back-up

25  tapes.  Especially confusing, is the fact that at the deposition of Mr. Sheehy, in January 2005,

26  defendants testified that they were reviewing and finishing up on the production of documents from

27  each of these 4 sources.  Kathrein Decl., Ex. 25 at 81-82.  Plaintiff has demanded an explanation, but

28  defendants have refused, stating instead that they intend to move for a protective order.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                              - 15 -

1   Plaintiff believes, especially in light of the failure to implement a document preservation

2   policy other than to not recycle back-up tapes, and defendants' hiding of hundreds of tapes, that

3   these sources should be reviewed for relevant documents. The relevance of these sources is shown

4   by the 30(b)(6) testimony of Douglas Sheehy.

5   In his testimony, Mr. Sheehy identified the H drive as being a drive where employees could

6   store personal documents and e-mails. *Id*. at 38, 58. In fact they were encouraged to use the H drive

7   since the desktops were supposedly not backed-up. *Id*. at 32, 34. The S drive is the drive on which

8   employees can share documents *Id*. at 38 and which contains submissions to and correspondence

9   with the FDA. *Id*. at 50-51.

10   The eRoom was one of the forms of communication used at CVT like e-mail. It was a place

11   where people could work together electronically, and post, share, comment upon, and edit

12   documents. *Id*. at 70-74. Unlike pdf's which cannot be annotated, eRoom documents can be. *Id*. at

13   74.

14   Documentum is CVT's database management system which, amongst other things, has FDA

15   communications stored in it. *Id*. at 22 & 50.

16   Clearly, the above sources contain, or are likely to contain relevant documents. Defendants'

17   reversal, one year after having represented that these sources would be searched, and presumably

18   had been searched for the original deadline, is baffling and prejudicial.

19   **E.    The Court Should Order Defendants to Show Cause Why They
                Should Not Be Sanctioned**

20   

21   Plaintiff has sought discovery of documents relevant to this case, consistent with Rule

22   26(b)(1). Moreover, the longstanding presumption recognized by the Supreme Court is that the

23   party responding to discovery bears the expense associated with responding to proper discovery

24   requests. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *OpenTV v. Liberate Techs.*,

     219 F.R.D. 474, 476 (N.D. Cal. 2003).

25   CVT cannot dispute that plaintiff's document requests pursuant to Rule 34 reach data stored

26   electronically, including on back-up tapes and other mediums used to archive data. *See*, *e.g.*,

27   *OpenTV*, 219 F.R.D. 474; *Thompson v. United States HUD*, 219 F.R.D. 93, 96 (D. Md. 2003)

28   

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                              - 16 -

1   (recognizing that Rule 34 definition of documents is broad and encompasses electronic data

2   compilations); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) (ordering defendant

3   to produce at its own expense back-up tapes at plaintiff's selection).[1]

4           Spoliation is "the willful destruction of evidence or the failure to preserve potential evidence

5   for another's use in pending or future litigation." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277,

6   284 (E.D. Va. 2001).  The elements of spoliation are: (1) an adverse party had a duty to preserve

7   evidence; and (2) the party destroyed the evidence.  *Id.* at 284.  The duty to preserve evidence arises

8   before litigation commences, "when a party reasonably should know that the evidence may be

9   relevant to anticipated litigation." *Silvestri v. GMC*, 271 F.3d 583, 591 (4th Cir. 2001) (prevention

10  of spoliation is necessary to preserve the integrity of the judicial process).  Accordingly, when a

11  party reasonably anticipates litigation, it has a duty to suspend any routine document purging system

12  that might be in effect.  *Id.*; *Thompson*, 219 F.R.D. at 101.

13          A federal court may sanction a party for spoliation of evidence under either its inherent

14  authority or under Federal Rule of Civil Procedure 37.  *Chambers v. NASCO*, 501 U.S. 32, 50-51

15  (1991).  *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (D. Cal. 1984).

16  Rule 37 discovery sanctions are limited to circumstances in which a party violates a court order or

17  discovery ruling.  *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994).  A court's inherent

18  authority, however, is based on the court's power to manage and ensure the expeditious resolution of

19  cases on its docket and is not limited to discovery violations.  *Barnhill v. United States*, 11 F.3d

20  1360, 1367 (7th Cir. 1993).  A court possesses an inherent power to sanction litigants for abusive

21  litigation practices that are taken in bad faith.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980);

22  *Link v. Wabash R. Co.*, 370 U.S. 626 (1962); *Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328

23  (9th Cir. 1981).

24

25

26  _____

27  [1]     *See generally Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002); *In Re Bristol-Myers Squibb Sec. Litig.*, 205 F.R.D. 437, 441-442 (D.N.J. 2002); *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999).

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                      - 17 -

The court has broad discretion to fashion an appropriate sanction. *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642-43 (1976). A district court's use of sanctions is limited by two standards: (1) any sanction must be just; and (2) it must specifically relate to the particular claim at issue in the discovery order. *Professional Seminar Consultants v. Sino Am. Tech. Exch. Council*, 727 F.2d 1470, 1474 (9th Cir. 1984) ("default judgment was appropriate in view of the order to produce documents or risk having facts established, and in view of . . . production of falsified documents"). The inherent power of a district court has been reinforced by Fed. R. Civ. P. 37(b)(2), which states, in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . . (C) An order striking out pleadings or parts thereof . . . or rendering a judgment by default against the disobedient party . . . .

*See Frame v. S-H, Inc.*, 967 F.2d 194, 203 (5th Cir. 1992) (court holds that lower court's striking defendants' answer and entering default judgment pursuant to Fed. R. Civ. P. 37 in response to document destruction and other obstructionist tactics was appropriate and, if subject to any fault, was that it was tardily applied).

In *General Nutrition*, 593 F. Supp. at 1455-56, the facts of which are analogous to the present case, the court noted that the defendant was subject to sanctions under the court's inherent powers and Fed. R. Civ. P. 37 for knowingly and purposefully permitting its employees to destroy key documents and records. The court determined that striking the defendant's answer and entering a default judgment was appropriate because, similar to the present case, the defendant's destruction of critical documents deprived plaintiff of the evidence it needed to build its case. *General Nutrition*, 593 F. Supp. at 1456. *See also Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 130 (S.D. Fla. 1987) ("Both more serious--and certainly less remediable--than a party's failure to respond to discovery requests is the willful destruction of discoverable materials. In cases where such destruction has occurred, default judgment has been deemed the only appropriate sanction under Rule 37.")

In *Computer Assoc. Int'l, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 169 (D. Colo. 1990), the court held that employing default as a sanction was appropriate when the court found (i)

1  that the defendant intentionally destroyed evidence after the obligation to preserve it arose and after

2  it had clear notice of that obligation, and concluded that the defendant acted intentionally, and (ii)

3  that the destruction of the best evidence relating to the core issue in the case inflicted the ultimate

4  prejudice upon the plaintiff.  The Court stated:

5  > Any lesser sanction would allow a party possessing evidence that would insure an
> adverse result to destroy that evidence with impunity, thus assuring defeat for the
6  > opponent while risking only a comparatively mild rebuke.  One who anticipates that
> compliance with discovery rules, and the resulting production of damning evidence,
7  > will produce an adverse judgment, will not likely be deterred from destroying that
> decisive evidence by any sanction less than the adverse judgment he (or she) is
8  > tempted to thus evade.

9  *Id*. at 170.  *See also Carlucci v. Piper Aircraft Corp*., 102 F.R.D. 472, 489 (D. Fla. 1984) (using

10 same test and reaching same result) ("Piper presented no evidence to substantiate Mr. Wilson's claim

11 that the document retention procedures are strictly complied with by Piper's employees.  In fact,

12 with the exception of the improper destruction of the Product Condition Reports, discussed *supra*,

13 the defendant did not provide any evidence that the procedures are ever complied with by its

14 personnel.  This is particularly shocking in light of my instruction on January 27, 1984 to Piper to

15 detail for me its means of retaining and disposing of documents.  My questions at the evidentiary

16 hearing further indicated my concern.  Piper's absolute failure to provide any evidence on this issue

17 must be construed as a tacit admission that the policy is a sham.").

18      In *In re Old Banc One S'holders Secs. Litig*., Master File No. 00 C 2100, 2005 U.S. Dist.

19 LEXIS 32154 (N.D. Ill. Dec. 8, 2005), the court granted sanctions for failing to preserve certain

20 evidence, and precluded defendants from cross-examining an expert witness.  The court found

21 defendant did not have a comprehensive document retention policy in place that was fully adopted or

22 disseminated or followed for the first year of this litigation.

23      In *In re Prudential Ins. Co. of Am. Sales Practices Litig*., 169 F.R.D. 598, 615 (D.N.J. 1997),

24 the court sanctioned defendant $1 million and drew the inference that the destroyed materials are

25 relevant and if available would lead to the proof of a claim, finding that while "there is no proof that

26 [defendant] . . . engaged in conduct intended to thwart discovery through the purposeful destruction

27 of documents, its haphazard and uncoordinated approach to document retention indisputably denies

28 its party opponents potential evidence to establish facts in dispute."

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                              - 19 -

1    In *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N. D. Cal. 1987), the

2    Honorable Judge Patel held a hearing, complete with the testimony of defendant's employees

3    involved in discovery compliance and document destruction after hearing of defendant's games.  In

4    granting sanctions to plaintiff, the court stated "it is beyond dispute that the supervisorial staff" of

5    the defendant understood the basis of the litigation when they made plans to destroy relevant

6    documents.

7    Also on point is *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir.

8    2002).  There, a party filed a motion for sanctions in the form of an adverse inference instruction for

9    a company's failure to produce certain e-mails in time for trial.  The district court denied the motion

10   based on its finding that the delay in producing the e-mails was not caused by an action of the

11   company that was taken in bad faith or with gross negligence and its finding that the corporations

12   had not shown that the missing e-mails would have been favorable to its case.  The Second Circuit

13   reversed, noting that the district court failed to consider the company's acts evincing purposeful

14   sluggishness as supportive of the corporations' claims that the e-mails were likely harmful to the

15   company.  On remand, the district court was directed to give the aggrieved party opportunity to

16   renew its motion for sanctions, with the benefit of discovery – including, but not necessarily limited

17   to, reexamination of the back-up tapes and appropriate depositions of the non-producing parties

18   affiants – and, if appropriate, an evidentiary hearing before the District Court.  It further held that

19   even ordinary negligence was sufficient to support an adverse inference instruction, even if that

20   negligence itself did not cause the destruction or unavailability of the evidence.

21   In one case, which involved the imposition of sanctions against a corporate defendant who

22   repeatedly engaged in a number of discovery abuses, Magistrate Judge Hemann recommended that

23   default judgment be entered against the defendant as sanctions for its discovery abuses.  *In re Telxon*

24   *Corp. Sec. Litig.*, No. 5:98CV2876, 1:01CV1078, 2004 U.S. Dist. LEXIS 27296 (N.D. Ohio July 16,

25   2004).  Note that the litigation concluded before the district judge issued any ruling on the magistrate

26   judge's Amended Report and Recommendation.

27   A "court is not necessarily required to attempt less severe sanctions before turning to the

28   sanction of dismissal . . . nor is a court required to provide an adversary hearing before imposing this

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                                    - 20 -

sanction." *Farm Construction Servs., Inc. v. Fudge*, 831 F.2d 18, 20 (1st Cir. 1987) (citing *Link*, 370 U.S. at 632. Courts have entered judgment by default or dismissed an action for abusive discovery practices in less dire circumstances. *Marshall v. F.W. Woolworth, Inc.*, 122 F.R.D. 117, 118-19 (D.P.R. 1988)(failure to answer interrogatories for almost one year; affirmative defenses stricken and default judgment entered; "[d]efendant's failure to fully answer interrogatories shows deliberate effort to impede discovery and disrupt the scheduled trial date"); *see also CIA Petrolera Caribe, Inc. v. ABBA Serv. Center*, 116 F.R.D. 90 (D.P.R. 1987) (striking answer and awarding default judgment for failure to comply with discovery orders).

The history of this case shows a pattern of defendants using technical obfuscation and the failure to preserve documents on their active servers to prevent a complete and intelligible production of documents and e-mails. Lesser astute counsel would collapse under the jargon, confusion and nut-shell game tactics employed by defendants. Plaintiff has repeatedly caught defendants at this game, and has avoided forcing the Court to weigh in. But the games continue and this Court should not have to waste its time on such games. *See Carlucci*, 102 F.R.D. at 489 ("It is not the Court's function to drag a party kicking and screaming through discovery. That is what the defendant required in this case and such conduct must be deterred if the courts are to perform their intended functions.") (citation omitted)

### F.   Defendants Have Waived the Attorney Client Privilege or the Right to Review for Relevance

The destruction, concealment, or alteration of documents may constitute obstruction of justice. *See* 18 U.S.C. §§1503 and 1512(b)(2)(A) and (B); *United States v. Andersen*, 374 F.3d 281 (5th Cir. 2004) (analyzing that §1512(b) requires an improper purpose, not improper means); *rev'd on other grounds*, ___U.S.___, 125 S. Ct. 2129 (2005); *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981); *United States v. Kirkland*, 330 F. Supp. 2d 1151, 1164 (D. Or. 2004). Purging of documents to avoid discovery of evidence that could be used in an anticipated official proceeding may also constitute a criminal act. *Andersen*, 374 F.3d at 298.

Moreover, numerous courts have found that wrongful conduct need not rise to the level of criminal conduct or fraud to apply this exception to attorney-client privilege assertions. *See, e.g.,*

1  *Blanchard v. Edgemark Fin. Corp.*, 192 F.R.D. 233 (N.D. Ill. 2000) (noting that term "crime-fraud"

2  is a misnomer); *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983) (applying exception to

3  lawyer's unprofessional conduct).[2]  In fact, the exception applies to communications relating to

4  evidence spoliation.  *See, e.g.*, *Rambus, Inc. v. Infineon Techs. AG,* 222 F.R.D. 280 (E.D. Va. 2004).

5       The February 10, 2005, document discovery cutoff has passed.  "'As a discovery deadline . . .

6  draws near, discovery conduct that might have been considered "merely" discourteous at an earlier

7  point in the litigation may well breach a party's duties to its opponent and to the court.'"  *Zubulake v.*

8  *UBS Warburg LLC*, 229 F.R.D. 422, 436 (S.D.N.Y. 2004) (citations and footnotes omitted).  This is

9  not the first time Latham has inexplicably failed to produce back-up made for its clients.  *See*

10  Kathrein Decl., Ex. 34 (Latham given only 14 days to produce 142 CDs).

11       Accordingly, by virtue of their destruction of emails, failure to preserve, and hiding evidence,

12  defendants should be found to have waived any right to claim privilege or even review for relevance,

13  and all tapes should be turned over immediately.

14      **G.**    **Defendants Should Be Compelled To Produce Evidence of Their**
              **Search Methodology**

15

16       Defendants admit that the dearth of e-mails produced by some defendants may be based on

17  their admission that not all e-mails or electronic documents were reviewed.  Rather, they were

18  selected by unidentified search terms, and then reviewed.  The history, here, supports the conclusion

19  that that process may be deficient.  The failure to cooperate in discovery process lends credence to

20  suspicion that requested information exists and should be produced.  7-37A Moore's Federal Practice

21  - Civil §37A.31, citing *Tulip Comp. Inter., B.V. v. Dell Comp. Corp.*, No. 00-981-RRM, 2002 U.S.

22  Dist. LEXIS 7792, at *18-*19 (D. Del. Apr. 30, 2002) (court found party's constant delaying tactics

23         [2]    *See also In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982) (***exception applies to***

24  ***misconduct inconsistent with the basic premise of the adversary system***); *In re Sealed Case*, 754
F.2d 395, 400 (D.C. Cir. 1985) (exception applies to work product created in furtherance of

25  spoliation); *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) (exception
applies to work product created "in furtherance of some sufficiently ***malignant purpose***"); *Int'l Tel.*

26  *& Tel. Corp. v. United Tel. Co.*, 60 F.R.D. 177, 180 (M.D. Fla. 1973) (exception applies to conduct
in furtherance of crime, fraud, or ***other misconduct***); *Sound Video Unlimited, Inc. v. Video Shack,*

27  *Inc.*, 661 F. Supp. 1482, 1486 (N.D. Ill. 1987) (same); *United States v. Ruhbayan*, 201 F. Supp. 2d
682, 686 (E.D. Va. 2002) (applying exception upon prima facie showing of ***obstruction of justice***).

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI              - 22 -

1   in responding to discovery and production of evidence that was initially claimed not to exist justified

2   production of electronic copies of e-mails on agreed upon set of terms, subject to privilege review,

3   even though relevance of discoverable information was based on suspicion).   Accordingly,

4   defendants should be compelled to reveal to plaintiff, under oath and at deposition, the process used

5   to select documents and the search terms used.   *See Judicial Watch, Inc. v. United States DOJ*, 185

6   F. Supp. 2d 54, 64-65 (D.D.C. 2002) ("Defendant, however, provides no description of how the

7   electronic index is organized or how the search was conducted.   The Putsay declaration fails to

8   explain whether key words were used and if so which key words were used to search for responsive

9   documents.   Without knowing these details regarding defendant's search, the Court cannot determine

10  whether defendant's efforts were "reasonably calculated" to recover the responsive records.")

11  **IV.       CONCLUSION**

12         This Court has the power and should sanction defendants for failing to comply with this

13  Court's order to complete document production, for failing to take steps to preserve relevant

14  evidence in an easily recoverable form, for failing to search for documents pursuant to their duties to

15  produce and for falsely representing that certain evidence did not exist.

16         In conclusion, plaintiff requests an order (i) finding defendants in civil contempt of this

17  Court's prior orders, (ii) entering appropriate sanctions, including if warranted after a complete

18  investigation, and if necessary a hearing with testimony, a default judgment against defendants, (iii)

19  ordering that defendants restore and produce all of the mailboxes the 20 witnesses identified by

20  plaintiff, as well as all 26(a) witnesses of plaintiff and defendants, without review or redaction, or

21  de-duplication, (iv) ordering defendants to immediately produce without review or redaction, the

22  hidden tapes they now admit they have backing up the hard drives of CVT's employees, for

23  restoration, and to pay the costs of restoration, (v)  ordering defendants to provide plaintiff with

24  immediate access to all documents on the S and H drives, the eRoom and Documentum database

25  system for the selection of production documents, and (vi)  awarding to plaintiff the costs, including

26  reasonable attorneys' and investigative fees, incurred by it in documenting CVT's contumacious

27  actions and preparing the present motion.

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                                      - 23 -

1   DATED:  February 24, 2006                    LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
2                                                PATRICK J. COUGHLIN
                                                REED R. KATHREIN
3                                                JEFF D. FRIEDMAN
                                                SYLVIA WAHBA KELLER
4                                                CONNIE M. CHEUNG

5

6                                                         /s/ Reed R. Kathrein
                                                _____
7                                                       REED R. KATHREIN

8                                                100 Pine Street, Suite 2600
                                                San Francisco, CA  94111
9                                                Telephone: 415/288-4545
                                                415/288-4534 (fax)

10                                               LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
11                                               WILLIAM S. LERACH
                                                ELIZABETH A. ACEVEDO
12                                               655 West Broadway, Suite 1900
                                                San Diego, CA  92101
13                                               Telephone: 619/231-1058
                                                619/231-7423 (fax)

14
                                                Lead Counsel for Plaintiffs
15
    T:\CasesSF\CV Therapeutics\BRF00028469.doc
16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND FOR AN
ORDER TO SHOW CAUSE - C-03-3709-SI                                            - 24 -

1                                 <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on February 24, I electronically filed the foregoing with the Clerk of the

3 Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4 denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

5 foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6 indicated on the attached Manual Notice List.

7

8                                       <u>/s/ REED R. KATHREIN</u>
                                      REED R. KATHREIN

9                                       LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP

10                                     Lerach Coughlin Stoia Geller Rudman &
                                    Robbins LLP

11                                     100 Pine Street, 26th Floor
                                    San Francisco, CA  94111

12                                     Telephone:  415/288-4545
                                    415/288-4534 (fax)

13

14                                     E-mail:ReedK@lerachlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:03-cv-03709

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elizabeth Aida Acevedo**
  eacevedo@milberg.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Patrick J. Coughlin**
  patc@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Paul H. Dawes**
  paul.dawes@lw.com

- **Sean M. Handler, Esq**
  ecf_filings@sbclasslaw.com nwortman@sbclasslaw.com

- **Robert A. Jigarjian**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Michele D. Johnson**
  Michele.Johnson@lw.com Beverly.Wilkinson@lw.com

- **Reed R. Kathrein**
  reedk@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com e_file_sf@lerachlaw.com

- **Jay L. Pomerantz**
  jay.pomerantz@lw.com

- **Darren J. Robbins**
  e_file_sd@lerachlaw.com e_file_sf@lerachlaw.com

- **Peter Todd Snow**
  peter.snow@lw.com carmela.ene@lw.com

- **John C. Tang**
  john.tang@lw.com jay.pomerantz@lw.com;matthew.missakian@lw.com

- **Sylvia Wahba**
  sylviaw@milberg.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)