UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CV THERAPEUTICS, INC. SECURITIES LITIGATION<br><br>_____ / | No. C-03-3709 SI (EMC)<br><br>**ORDER RE *IN CAMERA* REVIEW OF DEFENDANTS' PRIVILEGE LOG AND DOCUMENTS** |

Pursuant to Judge Illston's April 3, 2006 Order re: Discovery Motions, Defendant CV Therapeutics, Inc. ("CVT") and the individual defendants (collectively, "Defendants") have submitted a revised privilege log and documents for *in camera* review. Upon review of the documents, the Court finds that Defendants have sufficiently met their burden to demonstrate the existence of the attorney-client privilege and/or work product protection as to all but the following documents: Hard Copy Documents Nos. 27, 30, 31, 35, 37, 63, 64, 65, 66, 72, 75, 112, 132, 133, 167, 234, and 242; and Email Documents Nos. 2, 6, 11, 14, 15, 17, 24, 26, 31, 53, 59, 62, 68, 76, 77, 94, 95, 104, 110, 131, 142, 144, 159, 163, 164, 167, 170, 177, 180, 181, 207, 208, 209, 211, 213, 214, 216, 217, 221, 222, 223, 233, 234, 240, 243, 246, 247, 258, 271 and 272.

## I.   PROCEDURAL HISTORY

Plaintiffs filed a motion to compel production of documents designated by Defendants as privileged. Docket No. 263. Judge Illston heard oral argument on the motion on March 31, 2006. Judge Illston referred *in camera* review of documents claimed as privileged to the undersigned. *See* April 3, 2006 Order Re: Discovery Motions. Upon referring the matter for *in camera* review, Judge Illston noted deficiencies in Defendants' privilege logs. *Id*. at 15-17. Pursuant to Judge Illston's order, this Court ordered Defendants to serve a revised privilege log "demonstrating whether each

such document is protected by the attorney-client privilege and/or work product doctrine." April 11, 2006 Order Re: *In Camera* Review.

Defendants lodged the revised privilege logs on April 21, 2006. To assist the Court, Defendants also submitted for *in camera* review a list of CVT legal personnel, organized by group and by alphabetical order, and a glossary of names and organizations.

Plaintiffs have filed a letter brief objecting to the adequacy of Defendants' April 14, 2006 privilege logs. Docket No. 317.

## II.   LEGAL STANDARD

A.   Attorney-Client Privilege

"'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.'" *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (citations omitted). The privilege is limited to "'only those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege.'" *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

As the party asserting the attorney-client privilege, Defendants have the burden of proving that the documents submitted for *in camera* review are indeed privileged. *Id. See also United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Defendants must show that the documents adhere to the essential elements of the attorney-client privilege: "'(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" 974 F.2d at 1071, n.2 (citing *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)). Each of these elements must be satisfied document by document by the privilege log and supporting declarations.

///
///
///

B. <u>Work Product Doctrine</u>

The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). Pursuant to the doctrine, documents and tangible things prepared by or for a party, or the party's representative, in anticipation of litigation are protected from discovery. *See In re Grand Jury Subpoena*, 357 F.3d at 906. A representative of a party includes the party's attorney, consultant, or agent. *See* Fed. R. Civ. P. 26(b)(3).

If a party satisfies its burden in showing that the protection afforded by the work product doctrine extends to the materials it has withheld, *see United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1080-81 (N.D. Cal. 2001) (discussing burden of proof), the materials may still be ordered produced but only "upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means.'" *In re Grand Jury Subpoena*, 357 F.3d at 906 (quoting Fed. R. Civ. P. 26(b)(3)). In ordering discovery of such materials when the required showing has been made, a court must "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). Again the burden of proof lies with the proponent of the privilege and each document must be tested against the adequacy of Defendants' privilege log and supporting material.

### III. DEFENDANTS' ASSERTION OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION

To establish attorney-client privilege and work product protection for each of the 335 documents submitted for *in camera* review, Defendants have submitted a revised privilege log, identifying, for the most part, the date of each document, the identity and position of each author and recipient (including CC copies), and the subject or description of the document. The entries identify (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated. Defendants also submitted the declaration of Tricia Borga Suvari, Vice President, General Counsel and Assistant Secretary of CVT.

1    Except as noted herein, each of the documents reviewed by the Court satisfies the criteria for
2  establishing that the communication was made in confidence and was limited those between CVT
3  employees and CVT's legal advisers for the purpose of seeking or giving legal advice. *See In re*
4  *Grand Jury Investigation*, 974 F.2d at 1071 (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir.
5  1989)). Many of the documents were designated as confidential. As to others not expressly
6  designated, the Suvari Declaration states that it is the common practice to treat documents from
7  CVT attorneys containing comments or revisions as confidential. Suvari Decl. ¶ 11. It is also
8  common practice to treat internal company communications as confidential. *Id.* ¶ 13.

9    Plaintiffs contend that Defendants have improperly withheld certain documents because they
10 relate to CVT's business issues, not the rendering of legal advice. Pls.' Mot. to Compel at 7.
11 Plaintiffs argue that Defendants must show that the documents were created for the primary purpose
12 of obtaining legal advice, not business advice, citing, *inter alia*, *North Pacifica, LLC v. City of*
13 *Pacifica*, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003)). *Id*. at 6. The "primary purpose" test
14 implicates legal advice "if the nonlegal aspects of the consultation are integral to the legal assistance
15 given and the legal assistance is the *primary purpose* of the consultation." 1 Paul R. Rice, *Attorney*
16 *Client Privilege in the United States* § 7:3, at 39 (2d ed. 1999) (emphasis in original). However, the
17 Ninth Circuit has recently suggested that the primary purpose test may have been replaced or refined
18 by the "because of" standard. *See Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209 at *4;
19 2004 U.S. Dist. LEXIS 17117 (N.D. Cal., Aug. 23, 2004) (citing *In re Grand Jury Subpoena (Mark*
20 *Torf/Torf Environmental Management)*, 357 F.3d 900 (9th Cir. 2004)).

21   In *In re Grand Jury Subpoena*, the Ninth Circuit, in addressing dual purpose documents in
22 the context of the work product doctrine, stated that "a document should be deemed prepared 'in
23 anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in
24 light of the nature of the document and the factual situation in the particular case, the document can
25 be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" 357 F.3d at
26 907 (citing Wright & Miller, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994) (emphasis
27 added)). The Ninth Circuit specifically pointed out that
28

4

> [t]he "because of" standard does not consider whether litigation was a *primary or secondary motive* behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation."

*Id.* at 908 (emphasis added). The court examines whether the threat of litigation "animated" preparation of the document (*id.*), and whether the litigation purpose "so permeates" the non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole. *Id.* at 910.

While *In re Grand Jury Subpoena* addressed the work product doctrine, and not the attorney-client privilege, parallel issues arise in both contexts where dual purpose documents are involved. In the former context, the Court must determine whether a document should be protected if it has not only a litigation purpose but also a nonlitigation purpose. In the context of attorney-client privilege, it must similarly determine whether the privilege applies to mixed communications which involve both legal and business advice. Accordingly, the Court applies the "because of" test to dual purpose documents for which Defendants claim attorney-client privilege. *See Visa U.S.A., Inc.*, *supra*, at *4 ("because of" test applies to attorney-client privilege or work product doctrine).

In applying the "because of" standard, the Court must consider "the totality of the circumstances," looking to the nature of the document and the factual situation of the particular case. *In re Grand Jury Subpoena*, 357 F.3d at 908. In conducting *in camera* review of the documents, the critical question is the extent to which the communication solicits or provides legal advice or functions to facilitate the solicitation or provision of legal advice. Many of the dual purpose documents in the instant case are not expressly directed at legal counsel in order to secure legal advice; typically, the document is widely distributed to both business personnel and legal counsel. As to these documents, Ms. Suvari states that "[i]t is a common practice at CVT for employees to make an implied request for legal review and advice from CVT's attorneys, by sending or copying communications and documents to the attorneys, even where such communications or documents do not expressly solicit legal review or advice." March 10, 2006 Suvari Decl., ¶ 10.

Ms. Suvari's assertion is general and conclusory. Taken to its logical limit, it would imply that every document, no matter how dominant its business purpose or how tangential legal counsel's role, would be shielded under the attorney-client privilege so long as a copy was circulated to legal counsel. This is not the law. The mere fact that a document was sent to an attorney does not make it a privileged communication. *See Barr Marine Products Co., Inc. v. Borg-Warner*, 84 F.R.D. 631, 635 (E.D.Pa. 1979). The declaration does not make any particularized showing of the role legal counsel played (and whether she actually provided legal advice) as to any specific document in this category.

On the other hand, the fact of this practice of implicitly soliciting legal comment combined with the content and context of the documents provide the Court with a basis for discerning the role of particular documents in obtaining legal advice and whether the "because of" test is met. In particular, the Court looks to the context of the communication and content of the document to determine whether a request for legal advice is *in fact* fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document. The attorney-client privilege protects documents which "involve either client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found." *Jack Winter, Inc. v. Koratron Co.,* 54 F.R.D. 44, 46 (N.D. Cal. 1971). The Court must also determine whether the legal purpose so permeates any non-legal purpose "that the two purposes cannot be discretely separated from the factual nexus as a whole." *In re Grand Jury Subpoena*, 357 F.3d at 910. In addition to context, the Court factors in the breadth of the recipient list in assessing the centrality of potential legal advice generated by the communication. The Court also considers whether a communication explicitly sought advice and comment.

The majority of the documents at issue are privileged. For example, a draft investor question and answer document was circulated by CVT's Chief Financial Officer, Dan Spiegelman, to legal and non-legal recipients for review, *see* Hard Copy Log, Docs. Nos. 186, 187, 188. The document

1  numbered 188 appears to be Ms. Suvari's copy of the memorandum, as indicated by the initials
2  "TBS," and contains handwritten notes demonstrating that the document was actually received and
3  reviewed by legal counsel as intended by the client. Those documents demonstrate an implied
4  request for legal advice and that in fact that advice was given. These documents are therefore
5  privileged.

6  As another example, draft versions of FDA filings were circulated to both legal counsel and
7  non-lawyer recipients. *See, e.g.,* Priv. Log of Email Docs. Nos. 134 & 135 (10/09/03 email
8  requesting input, including legal input, on draft FDA Briefing Document). Documents created in the
9  context of seeking FDA approval, an inherently legal process, present "a circumstance virtually
10 necessitating legal representation," as the FDA approval process requires close supervision by legal
11 counsel. *In re Grand Jury Subpoena*, 357 F.3d at 909. In this way, the process of seeking FDA
12 approval is analogous to the process of crafting a patent application before the Patent and Trademark
13 Office. In the patent context, "communications from inventor to patent lawyer [in connection with
14 proceedings before the PTO], even those that are entirely technical, remain presumptively protected
15 by the attorney-client privilege." *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144
16 F.R.D. 372, 378 (N.D. Cal. 1992). Similarly, communications concerning FDA review and approval
17 presumptively entail the drug manufacturer ongoing dialogue with its attorneys "as part of the
18 process of shaping and focusing a patent application, and that it is reasonable for them to expect that
19 dialogue to remain confidential." *Id.* The nature and context of these documents, together with Ms.
20 Suvari's declaration, are sufficient to establish the privilege. The legal nature of the FDA context
21 and the need for review and guidance of counsel permeates these communications.

22 As another example, Hard Copy Log Document No. 51, mentioned in Judge Illston's April 3,
23 2006 Order (at pp. 16-17) was circulated to a "Core Team" that incorporated legal functional group
24 and was intended to solicit legal advice. *Cf. In re Buspirone Antitrust Litigation*, *supra*, 2002 U.S.
25 Dist. LEXIS 23463 at *12 ("'information [sent] to corporate counsel in order to keep them apprised
26 of ongoing business developments, with the expectation that the attorney will respond in the event
27 that the matter raises important legal issues.'") (citing *In re Pfizer, Inc. Sec. Litig.*, 1993 U.S.Dist.
28 LEXIS 18215, 1993 WL 561125 at *6); *Jack Winter, Inc., supra*, 54 F.R.D. at 46; *Segerstrom v.*

*U.S.*, 2001 U.S.Dist. LEXIS 2949 at *12 (N.D.Cal., Feb. 6, 2001) (attorney-client privilege applies where the non-privileged communication is "'so interwoven with the privileged communications that disclosure of the former leads to disclosure of the latter'") (quoting *In re Fischel*, 557 F.2d at 212). More importantly, the document pertains to draft Ranolazine labeling, and contemplate submissions to the FDA. As explained above, correspondence pertaining to FDA review or approval occur in an inherently legal context, and the need for and importance of legal advice can fairly be implied.

The Court finds that Defendants have adequately established the privilege and/or work product protection as to all but sixty-seven (67) of the 335 documents that Defendants have submitted for *in camera* review. The Court finds the vast majority of documents entail confidential communications in connection with the giving or obtaining of legal advice and were animated by the need for such advice. These exceptions are discussed below.

A.  <u>Curable Omissions or Errors (Hard Copy Documents Nos. 132, 133)</u>

Of the documents for which privilege is not substantiated, two contain errors or omissions in the privilege log which may be cured ministerially.[1]

Hard Copy Documents Nos. 132 and 133 (Launch Team meeting minutes), were redacted, but Defendants have highlighted nonprivileged portions of the documents for redaction, rather than the portion reflecting legal advice. As this appears to be inadvertent error, Defendants are granted leave to revise the redacted portion of the document to accurately reflect the privileged communication.

B.  <u>Documents Sent to Third Parties (Hard Copy Documents Nos. 30, 63, 64, 65, 66, 242)</u>

Attorney-client communications disclosed to third parties can lose their privilege. But in seeking advice from a legal professional, "courts have extended the [attorney-client] privilege to the substantive advice and technical assistance" of agents of the attorney. 1 Rice, Attorney-Client Privilege § 3:3, at 14; *see also id.* at 22 (noting that privilege covers confidential communications from client to agent, from client to attorney in presence of agent, from attorney to agent, and from

---

[1] Given Defendants have been afforded two opportunities to submit an adequate privilege log, they are not entitled to make any further substantive revisions, additions, or explanations of the log.

agent to attorney, provided that communications not from client reveal prior confidences of client). The issue of whether a nominal third party qualifies as an agent of the attorney so as to preserve the privilege is informed by the leading case of *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).

In *Kovel*, the court held that the attorney-client privilege extended to confidential communications made by a client to an accountant in the attorney's employ, even though the accountant was not an attorney. The communications were incident to the client's obtaining legal advice from the attorney. Analogizing the role of the accountant in assisting the lawyer to that of an interpreter assisting the lawyer when a client speaks a foreign language -- the latter relationship clearly covered by the attorney-client privilege -- the court stated:

> the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege, any more than would that of the linguist . . . ; the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. . . . What is vital to the privilege is that the communication be made in confidence *for the purpose of obtaining legal advice from the lawyer*. If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."

*Id.* at 922 (emphasis added). The courts have taken an expansive view of protected communications between independent contractors and counsel where the outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice. *See In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994).

When considering whether a nominal third party is an agent of the attorney, the crucial question is whether a communication to that party was made for a legal purpose. If the third party consultant is involved in the giving of legal advice, the privilege obtains. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476-77 (E.D. Pa. 2005) (consultants including testifying experts). If the third party agent or consultant is retained by the client for non-legal purposes, the privilege is lost. *Visa U.S.A., Inc.*, *supra*, at *5; *McCaugherty v. Siffermann*, 132 F.R.D. 234, 237-40 (N.D. Cal. 1990). In *Federal Trade Commission v. Glaxosmithkline*, 294 F.3d 141, 147 (D.C. Cir. 2002) the D.C. Circuit applied the attorney-client privilege to documents circulated to outside consultants where the consultants were "needed to provide input to the legal department and/or

9

receive the legal advice and strategies formulated by counsel." *Id.* at 147. There, the FTC subpoenaed documents related to GSK's manufacturing and marketing of its drug, Paxil, and filings with the FDA regarding Paxil. Addressing privileged attorney-client communications distributed to GSK's public relations and government affairs consultants, the D.C. Circuit noted that GSK's corporate counsel worked with these consultants "in the same manner as they did with full-time employees," finding "no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *Id.* at 148.

Here, Defendants have provided evidence that CVT has retained certain third party experts as consultants who are held to the same, if not higher, standard of confidentiality to which Board members and employees are held.[2] Suvari Decl., ¶ 14. But in addition to confidentiality, Defendants must also show the third parties to whom the documents were disclosed were retained by CVT or its lawyers "for the purpose of obtaining legal advice," not merely for the purpose of providing business advice. *Kovel*, 296 F.2d at 922; *Visa U.S.A., Inc.*, *supra*, at *7-8 (consultants retained for business rather than legal purpose); *McCaugherty*, 132 F.R.D. at 240. Defendants failed to make the requisite showing in several instances:

1. Hard Copy Doc. No. 30: the document was copied to Kathy Lewton who is not identified as a corporate employee or as legal counsel. Her name does not appear on the list of legal personnel, which Defendants provided for the *in camera* review. There is no indication she played a role in CVT's obtaining legal advice.

2. Hard Copy Docs. Nos. 63, 64, 65, 66, 242: the privilege log does not identify or describe the recipients of the memorandum from CVT's general counsel. They are simply referred to as members of the 2003 Strategy Summit. CVT has submitted

---

[2] For example, Email Document No. 96 from Andrew Wolff, Senior Vice President of CVT's Clinical Research and Development department, attaches a draft section of the NDA (New Drug Application) amendment for review by the recipients, including Gary Slatko, identified on Defendants' glossary as Paragon Rx, a third-party consultant retained to assist CVT with the progression of its drug Ranexa through the FDA review and approval process. Suvari Decl., ¶ 14. As Defendants have minimally demonstrated that communications with Slatko remain confidential and were part of CVT's dealings with the FDA, the document remains protected by the attorney-client privilege.

10

evidence that these individuals entered into confidentiality agreements with CVT, but does not identify who those individuals are, or whether they acted as agents of CVT's legal counsel and played a role in facilitating legal rather than business advice. *See* Suvari Decl., ¶ 14. Furthermore, the document enclosed with the memorandum was submitted to the United States Food and Drug Administration, waiving any privilege as to that document. *See In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984) (where corporation voluntarily disclosed material to SEC, corporate client could not selectively assert attorney-client privilege in class action litigation). *See also Mextel, Inc. v. Air-Shields, Inc.*, 2005 U.S.Dist. LEXIS 1281 at *34 (E.D. Pa., Jan. 31, 2005) (noting that corporation's communications with FDA were not privileged under state law of attorney-client privilege).

C. <u>Board of Directors Minutes</u>

Hard Copy Document No. 37 is a final, signed version of the February 1, 2002 telephone meeting of the CVT Board of Directors. Nothing therein appears to reflect and reveal confidential attorney-client privileged communication. The Court has reviewed the redaction of other Board minutes and finds their scope appropriate. Hard Copy Document No. 37 must be produced.

D. <u>Non-Privileged Communications</u>

Defendants have failed to meet their burden of established the privileged nature of the following communications. The following documents do not reflect the giving or seeking of legal advice or that obtaining such advice was an important purpose of the communication. Nor have Defendants established the business or technical purpose of the communications were so permeated by the need for legal advice such that the documents were created "because of" the need to obtain legal advice.

  1. <u>Hard Copy Documents Nos. 27, 31, 35, 72, 75, 112, 167, 234</u>

Here are examples of particular documents:

- No. 31: this memorandum regarding requirements of American Heart Association scientific meeting press kit materials serves a marketing or public relations purpose, and Defendants have not demonstrated that public relations

issues here were so intertwined with legal issues to that it may be inferred that the communication was created because of the need to obtain legal advice.

- No. 72: the memorandum encloses a poster created by Bernie Chaitman, identified on Defendants' Glossary as an advisor from St. Louis University School of Medicine. The poster contains technical information for an abstract. Any role this document played in seeking legal advice appears extremely attenuated.

- No. 75: the memorandum encloses a draft medical manuscript for publication. Defendants have not demonstrated the role of legal counsel in submitting manuscripts for publication. *Cf.* Hard Copy Log, Doc. No. 137 (redacting publication release form reflecting communication with legal counsel).

2. <u>Email Document Nos. 2, 6, 11, 14, 15, 17, 24, 26, 31, 53, 59, 62, 68, 76, 77, 94, 95, 104, 110, 131, 142, 144, 159, 163, 164, 167, 170, 177, 180, 181, 207, 208, 209, 211, 213, 214, 216, 217, 221, 222, 223, 233, 234, 240, 243, 246, 247, 258, 271, 272</u>

Again, here are some specific examples:

- No. 59: This draft poster for a symposium was circulated from a member of CVT's Pharmacological Sciences department to CVT officers and various department directors, as well as unidentified email recipients SHRYOJC@MEDICINE.ufl.edu and ca@mmrl.edu, whose inclusion destroys the confidential nature of the communication absent an explanation of who these recipients were. Furthermore, no corresponding email appears on the privilege log to show, nor have Defendants otherwise shown, that legal advice was sought as to this draft poster. It contains clinical information.

- Nos. 62, 104, 110, 214, 216, 217, 240, 243, 247, 258: Emails circulating draft abstracts for review, including abstracts prepared for submission to the ACC Annual Scientific Session. Defendants have not demonstrated that a request for legal advice was central to the communication.

12

- Nos. 68, 76, 77, 131, 142, 144, 159, 170, 208, 209, 271: emails attaching various draft manuscripts of drug studies, including manuscripts scheduled for submission for publication, or slide presentation for AHA annual meeting (No. 271). Email Document No. 170 contains in the email string a communication from Brian Lewis, patent counsel, which may be redacted. As to the remainder of No. 170 and the other documents, however, Defendants have not shown that the documents were created as part of the FDA approval process or otherwise communicate giving or obtaining legal advice. *Cf.* Hard Copy Log, Doc. No. 137 (redacting publication release form reflecting communication with legal counsel).

- Nos. 207, 221, 222: email strings regarding JAMA/CARISA[3] letters to the editor (No. 207) or responses to questions on published Cancer Letters article (Nos. 221, 222). The emails concern publications about CVT products, but do not demonstrate an implied request for legal advice.

- As to Email Documents Nos. 177, 211, 213, 234, the email strings contain attorney-client privileged communications, such as comments by legal counsel on a draft of FDA briefing (No. 177) or request for legal comment on employee compensation (No. 234). However, these documents also contain non-privileged communications which do not reflect giving or obtaining legal advice, such as Strumph's 1/21/2004 response to Karp's email (No. 177). Defendants have made no showing that the privilege attaches to these portions of the email communications. These documents must be produced, with privileged portions involving or pertaining to counsel redacted.

///

///

---

[3] "CARISA" is an acronym for the clinical trial of the Ranolazine drug: Combination Assessment of Ranolazine in Stable Angina. "MARISA" refers to the Monotherapy Assessment of Ranolazine in Stable Angina.

13

## IV. CONCLUSION

Defendants' privilege and work product objections to producing the documents listed on the privilege log are sustained except as to the following documents: objections are overruled as to Hard Copy Documents Nos. 27, 30, 31, 35, 37, 63, 64, 65, 66, 72, 75, 112, 132, 133, 167, 234, and 242; and Email Documents Nos. 2, 6, 11, 14, 15, 17, 24, 26, 31, 53, 59, 62, 68, 76, 77, 94, 95, 104, 110, 131, 142, 144, 159, 163, 164, 167, 170, 177, 180, 181, 207, 208, 209, 211, 213, 214, 216, 217, 221, 222, 223, 233, 234, 240, 243, 246, 247, 258, 271, and 272, with leave to redact privileged portions of Email Document Nos. 170, 177, 211, 213, and 234. Defendants' attorney-client objection is overruled as to Hard Copy Documents Nos. 132 and 133 with leave to correct the redaction of the documents in order to reassert the privilege.

IT IS SO ORDERED.

Dated: June 16, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge