United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CV THERAPEUTICS, INC. SECURITIES LITIGATION<br><br>_____/ | No. C-03-3709 SI (EMC)<br><br>**ORDER RE PLAINTIFF'S LETTER OF JULY 7, 2006, AND DEFENDANTS' LETTER OF JULY 7, 2006**<br><br>**(Docket Nos. 338, 339, 348, 358, 370)** |

On July 7, 2006, Plaintiff filed a letter brief claiming that Defendants had violated Judge Illston's order of April 3, 2006. On the same day, Defendants filed a letter brief seeking a protective order. Judge Illston referred the discovery disputes to the undersigned for resolution.

## I. DISCUSSION

Both discovery disputes concern production of documents from the DLT and Exabyte Tapes. The DLT Tapes contain backups of CVT's email exchange server during August and September 2002. *See* SI Order of 4/3/06, at 11. "The Exabyte tapes appear to contain backups of CVT employees' hard drives." *Id.* Both the DLT and Exabyte Tapes tapes were belatedly discovered by Defendants after Plaintiff received information from an undisclosed source about the existence of the tapes. *See id.* Judge Illston noted these tapes would have been subject to the terms of the Backup Tape stipulation had they been earlier discovered and properly handled. Judge Illston ordered Defendants to "review and prepare full catalogs for all Exabyte and DLT tapes from the time period covered in the Backup Tape Stipulation." *Id.* at 13. Plaintiff would then inform Defendants which documents Plaintiff wished to have produced. *See id.* "Defendants shall produce

1  all requested documents, except for those protected by a privilege . . . ." *Id.*  Defendants are to "bear
2  the full cost associated with all this discovery." *Id.*

A.   DLT Tapes

With respect to the DLT Tapes, there appear to be 5,000 documents at issue. Apparently, Defendants have not produced these documents to Plaintiff because Plaintiff did not designate these documents by April 28, 2006, as required by Judge Illston's order. Defendants do not contest, however, that Plaintiff's late designation was due to technical problems which Defendants' technicians and Plaintiff's technicians worked together to resolve. Accordingly, the Court DENIES Defendants' motion for a protective order with respect to the 5,000 documents from the DLT Tapes.

B.   Exabyte Tapes

With respect to the Exabyte Tapes, Plaintiff designated some 423,835 documents for production, representing documents from the hard drives of 26 employees. Although this is undisputedly a large number of documents, Plaintiff explains that this was out of his control because Defendants never made a list of the actual documents available for selection and instead only gave Plaintiff the employee names and the dates of their hard drives. Defendants claim that it was not possible to provide a more specific catalog. *See* Lui-Kwan Decl. ¶ 12 ("Because of the nature of the various electronic sources, Defendants were able to provide Plaintiff with a document-by-document list for the S and H drives, eRoom and Documentum. . . . However, the most detailed list Defendants could create for the DLT and Exabyte tapes identified employees and the date each exchange mailbox backup (for DLT tapes) or hard drive backup (for Exabyte tapes) was made."); *id.* ¶ 21 (indicating that "select[ing] individual documents from the DLT and Exabyte tape catalogs . . . was technically impossible according to Defendants' vendor").

With respect to these 423,835 documents, Defendants then applied their de-duplication process, which reduced the number of documents to 129,000. Defendants produced 4,000 out of the 129,000 documents, which came from the hard drives of the Individual Defendants.

Defendants argue that it would be unduly burdensome and expensive to produce the remaining 125,000 documents. Plaintiff argues that Defendants violated the terms of Judge Illston's order by applying the de-duplication process to the 423,835 documents. Plaintiff is amenable to

1 reducing the number of documents from the Exabyte Tapes but asserts that he needs information
2 about the documents (*i.e.*, more specific cataloging) in order to do so.  Plaintiff indicates that he is
3 loathe to reduce the number of documents based on the identity of the employees because "(1) each
4 person in the core group is on their privilege logs or an assistant to that person; and (2) defendants
5 allowed everyone to delete their emails after the litigation so there is no assurance any were
6 produced in the main production."

7     The initial universe of documents at issue is 423,835 documents.  However, after applying
8 the de-duplication process, a process permitted by Judge Illston as to "S" and "H" drives,
9 "Documentation," and "eRoom" (*See* Order of Referral, Docket #383, p. 1, and April 3, 2006
10 discovery order, pp. 7-8), there remains 129,000 documents chosen by Plaintiff, of which 4000
11 would have been produced.  Plaintiff has failed to demonstrate why application of the de-duplication
12 process as applied to the Exabyte documents is materially different from or causes undue prejudice
13 not extant for the other categories of documents.  As Judge Illston permitted the use of de-
14 duplication for those other categories, this Court finds no substantial reason not to permit it here.

15     As to the remaining 125,000 documents chosen by Plaintiff, the Court permits Defendants to
16 apply the search terms to Plaintiff's selections.  The Court refuses to require Plaintiff to select only
17 60,000 of the 125,000 documents because Defendants have provided scant information on which
18 Plaintiff may base his selection.  Defendants have not produced "full catalogs" as contemplated by
19 Judge Illston's order of April 3, 2006.  Through no fault of Plaintiff, Plaintiff is hamstrung by this
20 lack of information.

21     On the other hand, the Court shall allow the remaining documents to be narrowed by
22 application of the search terms.  Contrary to what Plaintiff argues, there is no indication that Judge
23 Illston ordered Defendants to produce all documents selected by Plaintiff as "an avenue to test or
24 assess the scope of the search terms defendants applied to the universe of extant electronic records in
25 this case."  Rather, Judge Illston gave Plaintiff an avenue to test or assess the scope of the search
26 terms by ordering Defendants to produce to Plaintiff the search terms Defendants used.

27     To the extent Plaintiff contests the adequacy of the search terms, it has not set forth an
28 alternative search methodology; moreover, no specific challenge to the search terms has been

brought and briefed before the Court. Employment of search terms is a reasonable means of narrowing the production in this instance. Although Defendants complain that the resulting production and need for review of privileged matters is too burdensome, the permitted employment of de-duplication and search terms strikes a reasonable balance between Plaintiff's needs and Defendants' burden. Moreover, Plaintiff offered to permit all designated documents to be produced while preserving Defendants' right to claim privilege; this could lessen Defendants' costs of review. Plaintiff contends that he also offered to narrow the documents to those within the relevant time period ordered by the Court, to which no response allegedly was made. *See* Pl.'s letter of 7/21/06, at 1 (located at Docket No. 370).

The Court therefore GRANTS in part and DENIES in part Defendants' motion for a protective order regarding the Exabyte Tapes.

C.  "Personal" Documents from Various Drives, Tapes, Etc.

Finally, Defendants ask for permission to withhold from various drives, tapes, etc. "[a] relatively small number of documents designated by Plaintiff that are personal in nature." Plaintiff does not discuss this issue expressly. The Court concludes that Defendants may withhold the documents, contingent on their producing a log akin to a privilege log that provides information as to why each document is being withheld. The Lui-Kwan declaration does not provide any information as to any of the categories, simply stating that documents of a personal nature are being withheld. *See* Lui-Kwan Decl. ¶ 69.

Accordingly, Defendants' motion for a protective order is GRANTED contingent on the provision of a log as discussed above. Such declaration should be served on Plaintiff within 10 days of this order.

///
///
///
///
///
///

4

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for a protective order. Plaintiff's request for full briefing on Defendants' motion is moot in light of the parties' agreement that the motion could be resolved based on the papers. The hearing on September 15, 2006, is hereby VACATED.

This order disposes of Docket Nos. 338, 339, 347, 358, and 370.

IT IS SO ORDERED.

Dated: August 22, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

5