UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CV THERAPEUTICS, INC. SECURITIES LITIGATION<br>_____/ | No. C-03-3709 SI (EMC)<br>**ORDER RE DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br>**(Docket No. 339)** |

      Defendants have moved for a protective order with respect to certain audio and video tapes in the possession of CVT's consultant ProEd. The tapes consist of recordings of four meetings held in preparation for CVT's presentation regarding Ranexa to the FDA's Cardiovascular and Renal Drugs Advisory Committee. The dates of the meetings are as follows: (1) July 16-17, 2003; (2) October 15-16, 2003; (3) November 12-13, 2003; and (4) December 7-8, 2003. Ms. Suvari, who is CVT's Vice President, General Counsel, and Assistant Secretary, attended all of the meetings. *See* Suvari Decl. ¶¶ 9-12. Mr. Sasinowski, CVT's outside counsel, attended the July and December meetings. *See* Sasinowski Decl. ¶¶ 12-13. Apparently, more than a year ago, Defendants produced the entirety of the transcript for the July meeting as a part of discovery. Defendants claim that the tapes are protected by attorney-client privilege.

      Having considered the parties' letters and accompanying submissions, the Court hereby **DENIES** the motion for a protective order.

///

///

///

## I. DISCUSSION

The proper legal standard for evaluating claims of attorney-client privilege are set forth in this Court's August 30, 2006 Order Granting Plaintiffs' Motion for Clarification or Reconsideration (Docket No. 404).

Defendants' claim of privilege rests on the declarations of Ms. Suvari and Mr. Sasinowski. Both Ms. Suvari and Mr. Sasinowski state in their respective declarations that "[a] major purpose of the 2003 CVT Meetings was to provide information to [the] attorneys that would enable them to render legal advice to CVT regarding the FDA's review of the NDA and/or the desired approval of Ranexa." Suvari Decl. ¶ 13; Sasinowski Decl. ¶ 14. Both Ms. Suvari and Mr. Sasinowski also state that information received at the meetings was used to provide legal advice to CVT "in connection with" the meetings scheduled with the FDA Committee. *See* Suvari Decl. ¶ 14; Sasinowski Decl. ¶ 15.

This evidence is insufficient to establish the applicability of the attorney-client privilege, whether the standard is the "primary purpose" or the "because of" standard. Even though Ms. Suvari and Mr. Sasinowski maintain that "a major purpose" of the July, October, November, and December meetings was to provide information to the attorneys, they never say that the primary or predominate purpose was legal in nature. In addition, the meetings clearly had a nonlegal purpose as well -- *i.e.*, to solicit comments and opinions from nonattorneys, *see* Scarlett Decl., Ex. B at 3-4 (Ms. Karp stating that "the goal today . . . is to really go through the data . . . to look deeper into the data that's within the NDA and to get your input, guidance, feedback in terms of things that we may be missing or, or positioning incorrectly") -- and there is no doubt that substantially similar meetings would have been held even absent the need for legal advice.[1] *Cf. In re Buspirone Antitrust Litig.*, No. 1413, 2002 U.S. Dist. LEXIS 23463, at *9 (S.D.N.Y. Dec. 10, 2002) ("Where non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the 'primary' purpose of the document is to seek legal advice.").

---

[1] In their motion for a protective order, Defendants do not make any argument that, at the very least, *portions* of the meetings were privileged as, *e.g.*, portions of a board meeting would be if legal advice were provided therein.

1    Moreover, it is questionable whether "a major purpose" of the meetings was to give
2 information to the attorneys when legal advice does not even appear to have been given *during* the
3 meetings. Notably, neither the declaration of Ms. Suvari nor the declaration of Mr. Sasinowski
4 states that legal advice was given during any of the meetings. Rather, the declarations simply state
5 that information received at the meetings was used to provide legal advice "in connection with" the
6 meetings before the FDA Committee. Factual information, however, cannot be funneled through
7 counsel and obtain privileged status thereby.[2] *Cf.* 1 Paul R. Rice, Attorney-Client Privilege in the
8 United States § 7:2, at 24 (1999 ed.) (noting that many courts fear businesses will immunize internal
9 communications from discovery by placing legal counsel in strategic corporate positions and funnel
10 documents through counsel).

11   The Court also finds that, for at least the July meeting, Defendants, having produced the
12 entire transcript in discovery, have waived any claim of privilege.[3] Under Ninth Circuit law, even
13 inadvertent disclosure of privileged material can result in a waiver of the privilege. *See Gomez v.*
14 *Vernon,* 255 F.3d 1118, 1131 (9th Cir. 1001). If there has been "an involuntary disclosure, the
15 privilege will be preserved if the privilege holder has made efforts reasonably designed to protect the
16 privilege. . . . Conversely . . . the privilege [will be deemed] to be waived if the privilege holder fails
17 to pursue all reasonable means of preserving the confidentiality of the privileged matter." *Id.* at
18 1131-32 (internal quotation marks omitted); *see also Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D.
19 323, 332 (N.D. Cal. 1985) (stating that, in determining whether an inadvertent disclosure gives rise
20 to a waiver, a court should consider the following factors: (1) the reasonableness of the precautions
21 taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the

---

[2] It is telling that, with respect to the July meeting, the transcript does not evidence any participation by Ms. Suvari at all. While Mr. Sasinowski did participate in the July meeting, that participation was limited. *See id.*, Ex. B at 94-96, 104-06, 111-15. More important, as noted below, any claim of privilege with respect to advice given by Mr. Sasinowski during the July meeting has been waived.

[3] Based on the evidence submitted, it appears that Defendants asserted privilege only with respect to part of the July meeting -- *i.e.*, that part in which Mr. Sasinowski participated. *See* Scarlett Decl., Ex. A, at 146 ("[I]t is clear from the transcript that Frank Sasinowski, who was outside counsel to CVT and advised CVT on the subject matter herein, was participating in at least portions of the meeting").

United States District Court
For the Northern District of California

discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness); 6-26 Moore's Fed. Prac. -- Civ. § 26.47[5] (noting that courts consider the following factors in deciding whether waiver results from an inadvertent disclosure: (1) the reasonableness of the efforts to avoid disclosure, (2) any delay in correcting the error, (3) the scope and burden of discovery, (4) the extent of disclosure, (5) time constraints related to the production of information, and (6) fairness).

In the instant case, Defendants have failed to establish nonwaiver as to the July meeting. *See United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (identifying nonwaiver as one element of the attorney-client privilege and stating that "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege"); *Weil v. Investment/Indicators, Research & Mgmt.*, 647 F.2d 18, 25 (9th Cir. 1981) ("One of the elements that the asserting party must prove is that it has not waived the privilege."). Even if the production of the transcript were deemed inadvertent, Defendants have offered no information as to any efforts made to preserve the confidentiality of the allegedly privileged matter. Moreover, the time to rectify the error -- *i.e.*, approximately four and a half months -- is lengthy. *See United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (noting that party who inadvertently disclosed privileged letter "did nothing to recover the letter or protect its confidentiality" for six months; adding that, if party had "immediately attempt[ed] to recover the letter, [he] could have minimized the damage caused by the breach of confidentiality" but, "[a]s a result of his failure to act, . . . he allowed the mantle of confidentiality which once protected the document[] to be irretrievably breached, thereby waiving his privilege") (internal quotation marks omitted).

///
///
///
///
///
///
///
///

## II. CONCLUSION

Accordingly, the Court denies Defendants' motion for a protective order and further orders Defendants to produce the tapes for the July, October, November, and December meetings.

This order disposes of Docket No. 339.

IT IS SO ORDERED.

Dated: August 31, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

5